IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JASON HAYES,

        Plaintiff,

v.

BOROUGH OF SHENANDOAH, et al.,

        Defendants.

3:13-CV-00657
(JUDGE MARIANI)

## MEMORANDUM OPINION

### I. Procedural History

Presently before the Court are two Reports and Recommendations by Magistrate Judge Carlson (Docs. 25; 26.) The Reports and Recommendations were written in response to two related Motions to Dismiss filed, respectively, by Defendants Borough of Shenandoah and two of its police officers (Doc. 11) and by Defendant Pennsylvania State Police (Doc. 19). The essence of the federal cause of action at issue[1] concerns the allegation that Plaintiff Jason Hayes, a job applicant who applied to positions with the Pennsylvania State Police Department and the Borough of Shenandoah Police Department, has a constitutionally-protected property interest in his prospective employment with these

---

[1] The underlying Complaint alleges five causes of action, both state and federal. (*See* Compl., Doc. 1, at ¶¶ 47-75.) These are entitled: Denial of Procedural and Substantive Due Process Rights under 42 U.S.C. § 1983 (Count I); Civil Conspiracy under 42 U.S.C. § 1983 (Count II); Civil Conspiracy under Pennsylvania law (Count III); Defamation (Count IV); and Intentional Interference with a Prospective Contract (Count V). (*See id.*)

Departments, and that the Departments unconstitutionally deprived him of that interest when they declined to hire him. (*Id.* at ¶¶ 47-53, 58-59.)

The events leading up to this lawsuit case began while Hayes was employed as a Borough of Shenandoah police officer in 2009. During that time, he was indicted for the crimes of Filing a False Police Report and of Conspiracy to File a False Police Report in connection with an investigation into the assault and subsequent death of a Mexican immigrant by Hayes's fiancée's son, Brandon Piekarsky. (*Id.* at ¶¶ 9-11, 17.) At the initiation of these criminal proceedings, Hayes was put on immediate suspension and shortly afterwards "tendered his resignation of employment to the Defendant Borough." (*Id.* at ¶¶ 15-16.) Ultimately, however, he was acquitted of both criminal charges following a fourteen-day federal jury trial in 2011. (*Id.* at ¶ 17.) Nonetheless, even after acquittal, Plaintiff was unsuccessful in obtaining a new job with the Pennsylvania State Police or with his old employer, the Borough of Shenandoah, for reasons that he believed to be pretextual. (*See, e.g., id.* at ¶¶ 36, 45-46.) He then filed the present action, and the various Defendants filed motions to dismiss.

II. <u>Discussion</u>

  a. **State Defendants**

Magistrate Judge Carlson first considered the Pennsylvania State Police's Motion to Dismiss (Doc. 19). He recommended granting the motion on two grounds: first, that prospective employment is not a constitutionally-protected property interest, (Doc. 25 at 6),

2

and second, that Hayes may not sue a state agency for damages under § 1983, because the state retains sovereign immunity from such lawsuits under the Eleventh Amendment, (Doc. 25 at 13).

Hayes only filed objections to the first ground of dismissal, which is therefore reviewed *de novo*. (*See* Pl.'s Objections, Doc. 27, at 5-6.) In his Objections, Hayes argued that he properly alleged unconstitutional deprivation of a property interest. But his argument rests on problematical grounds: namely an administrative regulation that he believes provides job security to "all new [state police] cadets and troopers," but which is followed by an Eastern District of Pennsylvania case that holds that, while the Eastern District believed that both state police cadets and applicants for cadet positions should be treated the same for purposes of due-process analysis, both "have no protected property interest in any anticipated employment." (*Id.* (citing *Altieri v. Pa. State Police*, 2000 U.S. Dist. 5041, at *30 (E.D. Pa. 2000)).) Thus, even assuming that cadets and job applicants who are interviewed for cadet positions have constitutionally equivalent property interests, Hayes has provided the Court with no reason to disagree with the Magistrate Judge's conclusions that Hayes "cannot possess a constitutionally protected property right to enrollment in the State Police Academy." (Doc. 25 at 13.) Indeed, all the case law appears to point decisively the other way. *See*, e.g., *Pipkin v. Pennsylvania State Police*, 548 Pa. 1, 697 A.2d, 190 (1997), 191-193. It is well-established that "[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral

3

expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents v. Roth*, 408 U.S. 564, 577, 92 S. Ct. 2701, 2709, 33 L. Ed. 2d 548 (1972). A job applicant, by definition, has no legitimate claim of entitlement to the job he seeks, but only an "abstract desire" for it. Therefore, he can have no constitutionally-recognized property right in the desired job.

Next, given that Hayes did not object to the second ground for dismissal, this ground is reviewed for clear error and manifest injustice. Under such a standard of review, the Court finds no reason to overrule the recommendation. As stated in the Report and Recommendation, the Commonwealth of Pennsylvania has not waived its sovereign immunity in this area, nor has such immunity been abrogated by Congress. (*See id.* at 14-15.) Therefore, even if Plaintiff had a property interest recognizable under the Due Process Clause, he could not recover money damages.

### b. Borough Defendants

In the second Report and Recommendation, Magistrate Judge Carlson considered the Motion to Dismiss filed by the several Borough Defendants (Doc. 11). He recommended dismissal, first, on the basis that Plaintiff cannot allege a constitutionally protected property interest, for the same reasons as discussed above, (Doc. 26 at 7), and, second, because Plaintiff had not adequately pled that the Borough itself followed a "custom or policy" of similar constitutional injuries that would entitle Plaintiff to bring a § 1983 action against it under *Monell v. Department of Social Services*, 436 U.S. 658, 98 S. Ct. 2018, 56

4

L. Ed. 2d 611 (1978), (Doc. 26 at 15). Finally, having recommended dismissal of all the federal causes of action, the Magistrate Judge recommended declining to exercise jurisdiction over the pendent state claims. (*Id.* at 20.)

Hayes first objected to the R&R by incorporating the arguments in his previous Objection as to his property interests in prospective employment. (Pl.'s Objections, Doc. 28, at 5.) The issues here are identical to those in the first R&R, and so the Court will adopt the R&R on this issue for the same reasons already discussed.

Second, Hayes did not object to the second recommendation concerning *Monnell* liability. Upon review of this recommendation for clear error and manifest injustice, the Court likewise finds that the Magistrate Judge was correct here as well. Not only is there no evidence of a "custom or policy" of similar constitutional violations; what is more, there could not as a matter of law be such a custom or policy, because declining to hire a job applicant does not implicate any constitutional interests. Accordingly, the Court will adopt this second recommendation as an independent basis for dismissal against the Borough.

Third, Hayes did object to the recommendation that this Court decline to exercise jurisdiction over the pendent claims. He argued that, if this case were to be refiled in the Schuylkill County Court of Common Pleas, he "will not be capable of selecting a fair and impartial jury from within the county" because the underlying homicide that led to his federal indictment "brought both the Borough [of] Shenandoah and Schuylkill County into the national spotlight on extremely negative terms over a long period of time." (*Id.* at 7.)

5

Moreover, Hayes asserts that one judge in Schuylkill County is a former prosecutor who prosecuted Brandon Piekarsky for homicide and testified adversely to Plaintiff in his own criminal trial. (*Id.* at 7-8.) He argues that this judge—as well as another judge whose only involvement in either of the criminal cases appears to be presiding over the Piekarsky trial— would need to recuse himself if this case were sent to state court. (*Id.* at 8.)

The Court cannot agree that these considerations favor the retention of federal jurisdiction. The Supreme Court has clearly directed that federal courts should not retain jurisdiction over cases in which all federal claims have been dismissed. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726, 86 S. Ct. 1130, 1139, 16 L. Ed. 2d 218 (1966) ("Certainly, if the federal claims are dismissed before trial . . . the state claims should be dismissed as well."); *see also City of Pittsburgh Comm'n on Human Relations v. Key Bank USA*, 163 Fed. App'x 163, 166 (3d Cir. 2006) ("This Court has confirmed that 'the power of the court to exercise pendent jurisdiction, though largely unrestricted, requires, at a minimum, a federal claim of sufficient substance to confer subject matter jurisdiction on the court.'") (quoting *Tully v. Mott Supermarkets, Inc.*, 540 F.2d 187, 195 (3d Cir. 1976)).

Moreover, absent a strong showing to the contrary, the Court will presume that state courts provide a proper forum for Plaintiff's grievances. The Court cannot assume on the basis of such threadbare arguments as those proffered that Pennsylvania will deprive Hayes of a fair trial just because there was significant controversy surrounding his criminal case. Indeed, Hayes has given no evidence to show that the judges at issue could not be

6

replaced by other unbiased and equally competent Schuylkill County judges, even if this Court were to assume that the former's activities warrant their recusal. Nor has he alleged with sufficient plausibility and specificity how a federal jury could be expected to treat his claims any differently than a Schuylkill County jury. A federal jury would draw from the 33 counties within the Middle District of Pennsylvania so that citizens of Schuylkill and surrounding counties could very well sit on the federal jury. Even assuming, *arguendo*, that a jury were to be composed entirely of Schuylkill County citizens, Plaintiff has not plausibly set forth facts, which, if proven, would establish that such citizens may be assumed incapable of rendering a fair and just verdict, as they are required to do under the law, or that a fair and impartial jury could not be empaneled through the use of the *voir dire* process.

### c. Dismissal is Without Leave to Amend

When granting a motion to dismiss, "a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008). The Magistrate Judge did not address this issue in the Reports and Recommendations. Nonetheless, the Court finds that it would indeed be futile to allow a curative amendment. Plaintiff bases his Complaint on a legal theory of due process protections contradicted by binding and precedential case law, as discussed above and in the two Reports and Recommendations. Because no curative

amendments could undo the legal insufficiency of Plaintiff's Complaint, the Motions to Dismiss will be granted without leave to amend.

III. **Conclusion**

Based on the foregoing considerations, the Reports and Recommendations (Docs. 25; 26) are **ADOPTED** and the Motions to Dismiss (Docs. 11; 19) are **GRANTED**. A separate Order follows.

Robert D. Mariani
United States District Judge